# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO


BROOKE NOELLE FAIR,

        **Plaintiff,**

**v.**                                      **No. CIV-16-798 LAM**

**NANCY A. BERRYHILL, Acting Commissioner**
**of the Social Security Administration,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum* (*Doc. 20*), filed January 13, 2017 (hereinafter "motion"). On March 16, 2017, Defendant filed a response (*Doc. 22*) to Plaintiff's motion and, on March 30, 2017, Plaintiff filed a reply (*Doc. 23*). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to have the undersigned United States Magistrate Judge conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 4* and 7]. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 15*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and that the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") should be **REMANDED**.

    .

# I.  Procedural History

On February 21, 2013, Plaintiff filed an application for Disability Insurance Benefits (hereinafter "DIB"), alleging disability that began on November 11, 2012 (*Doc. 15-12* at 2).[1]  On June 12, 2013, Plaintiff also filed an application for Supplemental Security Income (hereinafter "SSI").  Plaintiff's DIB and SSI applications were both denied at the initial level on September 6, 2013 (*Doc. 15-8* at 4 and 8, respectively), and at the reconsideration level on November 1, 2013 (*id*. at 14).  Plaintiff requested a hearing to review the denial of her applications (*id*. at 20), and Administrative Law Judge Ann Farris (hereinafter "ALJ") conducted a hearing on August 6, 2015  (*Doc. 15-5* at 2-43).  Plaintiff appeared, represented by her former attorney, and testified.  *Id*. at 7-36.  Vocational Expert Leslie White (hereinafter "VE")[2] also appeared and testified.  *Id*. at 36-40.  On September 22, 2015, the ALJ issued a decision (*Doc. 15-4* at 5-19) finding that Plaintiff "has not been under a disability within the meaning of the Social Security Act from November 11, 2012, through the date of this decision" (*id*. at 5).  On October 5, 2015, Plaintiff requested that the Appeals Council review the ALJ's decision.  [*Doc. 15-3* at 28].  On March 31, 2016, Plaintiff's counsel submitted additional evidence, consisting of treatment records from The Peak Psychiatric Hospital, for the period from February 22, 2016 to March 18, 2016, to the

---

[1] Plaintiff's last day of insured status for DIB is December 31, 2017.  [*Doc. 15-4* at 7].  Therefore, in order to receive DIB benefits, Plaintiff must establish that she became disabled on or before that date.  *See* 42 U.S.C. § 423(a).  SSI benefits are not so limited, but benefits may only be paid beginning in the month immediately following the month in which an SSI claim was filed.  42 U.S.C. § 1382(c)(7).

[2] Although the VE is identified in the hearing transcript only as "Ms. White" (*Doc. 15-5* at 2), her resume further identifies her as "Leslie White" (*Doc. 15-13* at 39).

Appeals Council for its consideration of her claims. [*Doc. 15-3* at 9-26; *Doc. 15-14* at 8-10]. On June 7, 2016, the Appeals Council denied Plaintiff's request for review on the ground that there was "no reason under our rules to review the [ALJ]'s decision." *Id*. at 2. In its decision, the Appeals Council indicated that, since Plaintiff's additional evidence was "about a later time," it would "not affect the decision about whether [Plaintiff was] disabled beginning on or before September 22, 2015" (the date of the ALJ's decision). *Id*. at 3. This was the final decision of the Commissioner. On July 8, 2016, Plaintiff filed her complaint in this case. [*Doc. 1*].

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted). An ALJ's decision "is not based on substantial

evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted). While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III.   Applicable Law and Sequential Evaluation Process

For purposes of social security disability claims, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process (hereinafter "SEP") has been established for evaluating a disability claim. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) meet(s) or equal(s) one of the "Listings" of

presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his or her residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience,and Medical History; and the ALJ's Decision

Plaintiff was born on August 3, 1969, and was 43 years old on November 11, 2012, the alleged date of disability onset. [*Doc. 15-12* at 2]. On September 22, 2016, the date of the ALJ's decision, Plaintiff was 47. Thus, Plaintiff was both a "younger person age 18-44" and a "younger person age 45-49"[3] during the time pertinent to the ALJ's decision regarding her disability claims.

Plaintiff's medical records include: hospital in-patient treatment records from Peak Psychiatric Hospital, for the period from February 22, 2016 through March 18, 2016 (*Doc. 15-3* at 9-26); office treatment records from Presbyterian Family Health Care, dated March 20, 2013 (*Doc. 15-17* at 13-19); outpatient records from University of New Mexico Behavioral Health, dated August 14, 2013 to September 4, 2013 (*Doc. 15-21* at 12-16; *Doc. 15-22* at 21-27; *Doc. 15-23* at 2-6, 22-30, 34); comprehensive assessment from Open Skies Healthcare, dated

---

[3] *See* 20 C.F.R. §§ 404.1563(c) and 416.963(c) (defining a "younger person" as "under age 50"), but also noting that younger persons that are age 45-49 may, in some circumstances, be more limited in the ability to adjust to other work than other persons in this category. As such, the Grid Rules include "Younger individual age 45-49" as a separate category. *See, e.g.*, Grid Rule 201.17 (20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 201.17).

February 2, 2015 (*Doc. 15-29* at 3-13); and office treatment records from First Choice Community Healthcare, dated May 12, 2014 to May 8, 2015 (Doc. 15-30 at 3-23). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that, Plaintiff "has not engaged in substantial gainful activity since November 11, 2012, the alleged onset date." [*Doc. 15-4* at 7]. At step two, the ALJ found that Plaintiff has the following severe impairments: "total right knee replacement; degenerative disc disease of the lumbar and cervical spines; bilateral plantar fasciitis; neuroma and hammertoes with associated bilateral foot pain; obesity; and depression." *Id*. at 8. At the third step, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926)." *Id*. In so finding, the ALJ stated that she considered Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 12.04 (affective disorders), and 12.06 (anxiety related disorders). *Id*. at 8-10. With respect to the paragraph B criteria for Listing 12.04, the ALJ found that Plaintiff has mild restriction of her activities of daily living, moderate difficulties with social functioning, moderate difficulties with concentration, persistence or pace, and has had no episodes of "significant decompensation," although she had "experienced one to two episodes of decompensation, each of extended duration." *Id*. at 9-10. Therefore, the ALJ determined that Plaintiff did not satisfy the paragraph B criteria for that listing. *Id*. at 10. The ALJ then determined that Plaintiff also did not meet the paragraph C criteria for Listings 12.04 and 12.06. *Id*. Prior to step four, the ALJ determined that, from November 11, 2012, the alleged onset of her disability, Plaintiff had the RFC to:

perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, [Plaintiff] can lift and/or carry ten pounds occasionally and less than ten pounds frequently. [Plaintiff] can stand and/or walk intermittently for up to two hours out of an eight-hour workday with regular breaks. [Plaintiff] can sit for six hours out of an eight-hour workday with regular breaks. [Plaintiff] can push and/or pull ten pounds occasionally and less than ten pounds frequently. [Plaintiff] can occasionally climb stairs and ramps, but never climb ladders, ropes, or scaffolds. She can occasionally balance and stoop, but never kneel, crouch, or crawl. She can occasionally reach overhead. She is limited to work involving simple, routine tasks. She can have only occasional and superficial interactions with the public and co-workers.

*Id*. at 11. In support of this RFC assessment, the ALJ found that Plaintiff's "medically determinable impairments might be expected to cause some of the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." *Id*. at 12.

At step four, the ALJ found that Plaintiff is unable to perform any of her past relevant work, consisting of stage technician (skilled, heavy exertion), contractor (skilled, medium exertion), painter (skilled, light exertion), electronics worker (unskilled, light exertion), and sound operator (skilled, light exertion) based on her current, sedentary, RFC. *Id*. at 16-17. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. *Id*. at 17. The ALJ relied on the VE's testimony that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the following

representative jobs: document specialist (DOT[4] 249.587-018) and addresser (DOT 209.587-010). *Id*. at 17-18. Both representative jobs are sedentary, and have SVP ratings of 2.[5] The VE testified that there are approximately 45,000 document preparer jobs and 800 addresser jobs in the national economy. *Id*. Therefore, the ALJ concluded that Plaintiff had not been under a disability as defined in the Social Security Act, from November 11, 2012 through the date of the decision. *Id*.

# V. Analysis

In her motion, Plaintiff argues that: (1) in determining Plaintiff's RFC, the ALJ (a) "failed to weigh the evidence properly" and (b) used improper factors to determine that Plaintiff was not credible; (2) the ALJ relied on VE testimony regarding job numbers that was inherently unreliable; and (3) the Appeals Council improperly rejected "new, relevant, and material evidence." [*Doc. 20* at 3]. Defendant responds that: (1) the ALJ reasonably found that Plaintiff has the RFC to perform a limited range of sedentary work, based on a reasonable evaluation of the medical evidence and a reasonable evaluation of Plaintiff's credibility (*Doc. 22*

---

[4] DOT stands for Dictionary of Occupational Titles, which provides information about job characteristics compiled by the Department of Labor that is used by VEs in disability hearings to determine claimants' job prospects. It is available at http://www.occupationalinfo.org/ (site last visited April 25, 2017).

[5] SVP stands for Specific Vocational Preparation, which is a rating of the amount of time it takes "a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." POMS-DI-25001.00-B-79, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001#b79 (site last visited April 25, 2017). SVP level 2 jobs require "[a]nything beyond [a] short demonstration up to and including one month" of such preparation. *Id*. A job with an SVP rating of 1 or 2 is considered "unskilled work." POMS-DI-25001.00-B-88, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425001001#b88 (site last visited April 25, 2017).

at 11-21); (2) Plaintiff did not challenge the VE's testimony regarding jobs numbers and, in any event, 45,000 document preparer jobs is significant (*id.* at 21-23); and (3) the additional documentation submitted to the Appeals Council is evidence of events that occurred after the ALJ's decision and, "therefore, simply does not pertain to the period adjudicated by the ALJ" (*id.* at 23). In her reply, Plaintiff asserts that the ALJ failed to account for all moderate limitations assessed by consulting expert Donald K. Gucker, Ph.D., failed to explain how she weighed the opinion of Christopher Cunningham, LMSW, and it was not Plaintiff's burden to develop the vocational evidence, as well as reiterating her prior arguments. [*Doc. 23*].

### A. The Appeals Council's Rejection of Additional Evidence

Although Plaintiff raises several issues on appeal, the Court will consider her final issue first. Plaintiff contends that the Appeals Council improperly rejected additional evidence she submitted after the ALJ's decision was issued. [*Doc. 20* at 23]. Specifically, the evidence consists of hospital in-patient treatment records from Peak Psychiatric Hospital dated February 22, 2016 through March 18, 2016 (hereinafter "Peak records"). Under the regulations in effect at the time of the Appeals Council's decision, "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b) (1987). Thus, additional evidence that is submitted to the Appeals Council need only be considered if the evidence is "new, material, and chronologically pertinent." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003). In this case, the Appeals Council indicated that it had "looked at" the Peak records and determined that they were about a later time than the one considered by the ALJ, and "do[] not affect the decision about whether [Plaintiff was] disabled before September 22, 2015."

[*Doc. 15-3* at 3].   This is a legal determination, which is reviewable by this Court *de novo*. *Threet*, 353 F.3d at 1191.

## 1.   Newness

"Evidence is new within the meaning of [§] 404.970(b) if it is not duplicative or cumulative."   *Id.* (quoting *Wilkins v. Sec'y of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)) (internal punctuation omitted).   Although Defendant did not contest that the Peak records are "new," the Court concludes that they are neither duplicative nor cumulative of evidence presented at the hearing and are, therefore, "new" within the meaning of the regulation.   The medical records submitted to the Appeals Council are evidence of an episode of decompensation of extended duration that took place five months after the ALJ determined that Plaintiff's mental impairments did not preclude her ability to obtain gainful employment.   Thus, the evidence is clearly not duplicative or cumulative, and satisfies the element of newness.

## 2.   Materiality

Evidence is material "if there is a reasonable possibility that it would have changed the outcome."   *Id.* (quoting *Wilkins*, 953 F.2d at 96) (internal punctuation omitted).   Defendant did not address the applicability of this factor to the Peak records.   The Peak records evidence a 25-day psychiatric hospitalization of Plaintiff that began five months after the ALJ's decision was issued.   Plaintiff was transferred from the Lovelace Haven Hospital emergency room to Peak "due to acute psychosis and being extremely paranoid."   [*Doc. 15-3* at 12].   While at Peak, Plaintiff received ongoing psychiatric care from Aleksandr Gazarov, M.D., who indicated in his initial notes that Plaintiff was "in a manic psychotic phase," and was "rambling" at times.   *Id.* at 13.   Dr. Gazarov noted that Plaintiff "appear[ed] to be in severe distress.   She [wa]s

hypervigilant, guarded, angry, agitated and suspicious." *Id*. Her "mood [wa]s anxious and depressed in a mixed state," and she was "delusional with paranoid persecution." *Id*. Dr. Gazarov noted further that Plaintiff's "[i]nsight and judgment [we]re felt to be limited," and her "[c]ognition and memory [we]re difficult to assess due to inability of the patient to communicate meaningfully." *Id*. at 14. He diagnosed Plaintiff with, among other things, "Schizoaffective disorder, bipolar type, exacerbation, with recent manic episodes; Opiate dependency; Insomnia; [and] Rule out posttraumatic stress disorder." *Id*. Finally, Dr. Gazarov noted that Plaintiff was "not compliant with her medications," and was "very suspicious about" them. *Id*. at 12. Dr. Gazarov attributed Plaintiff's non-compliance to her paranoia, and noted that, going forward, "[m]ost likely, she will drop the medications as she did lately believing that they are poison." *Id*. at 15. He suggested possibly treating her with injectable Abilify,[6] in order to avoid noncompliance issues. *Id*.

One week later, although Plaintiff reported she was "fine," Dr. Gazarov noted she was "confused, disoriented, [and] unable to make proper eye contact"; her mood was "depressed"; and at times she was "smiling inappropriately or talking to herself." *Id*. at 22. After another week, Dr. Gazarov noted that Plaintiff had "slept overnight for up to 2 hours," and in the morning "was extremely angry, agitated, psychotic, confused and disoriented." *Id*. at 21. She was given

---

[6] Abilify (generic name aripiprazole) is used to treat the symptoms of schizophrenia, bipolar disorder, and major depressive disorder. https://www.drugs.com/abilify.html (site last visited April 25, 2017).

Haldol [7] and Ativan, [8] after which she seemed "mildly sedated," and "still confused and disoriented." *Id*. Plaintiff was "hypervigilant, guarded, internally stimulated and at times talking to herself, rambling and mumbling." *Id*. Her mood was "anxious." *Id*. Dr. Gazarov made several changes to Plaintiff's medications, and ordered that she "remain on one-to-one level of observation today." *Id*. at 23. After another week, Dr. Gazarov noted that Plaintiff was "doing much better," and had "approached her baseline level of functioning." *Id*. at 19. Plaintiff was discharged from Peak the following day, and was described by Dr. Gazarov as "stable with significant improvement." *Id*. at 10. However, Dr. Gazarov noted that Plaintiff's "prognosis [wa]s guarded," stating that "[s]he will remain stable as long as she is compliant with the medications and stays off drugs." *Id*.

The ALJ acknowledged that Plaintiff's depression is a "severe impairment" established by medical evidence. [*Doc. 15-4* at 8]. However, despite Plaintiff's numerous psychological complaints and symptoms, the ALJ focused her decision on Plaintiff's physical impairments and appeared to significantly discount Plaintiff's mental issues as incident to drug usage. For example, the ALJ only briefly mentioned the mental health assessment by Christopher Cunningham, LMSW noting, first, that Mr. Cunningham recommended that Plaintiff "get

---

[7] Haldol (generic name haloperidol) is an antipsychotic. https://www.drugs.com/cdi/haldol.html (site last visited April 25, 2017).

[8] Ativan (lorazepam) is a benzodiazepine, used to treat anxiety disorders. https://www.drugs.com/search.php?searchterm=Ativan&a=1 (site last visited April 25, 2017).

medication management," and then essentially rejecting his entire assessment as "document[ing] self-reported anxiety and panic attacks, which appear to be primarily related to social stressors; relationship problems, financial problems, and lifestyle changes." *Id*. at 14. In light of the Peak records, a more comprehensive consideration of Mr. Cunningham's assessment seems warranted.

The ALJ also failed to discuss anxiety in any meaningful way, even though she claimed to have considered whether Plaintiff's anxiety met the criteria for Listing 12.04. *See id*. at 10. Thus, the ALJ implicitly found that Plaintiff's anxiety did not satisfy the "*de minimus*" standard of step two severity (*see id.* at 8), which draws the line only where an impairment is so slight that it "do[es] not significantly limit any 'basic work activity.'" *Langley*, 373 F.3d at 1123. Considering whether anxiety that does not satisfy the much lower step two severity standard under step three is pointless, since listing-level impairments are so severe that they are presumed to be disabling. *See* 20 C.F.R. §§ 404.1511(a) and 416.911(a).

Additionally, the ALJ made several inconsistent statements regarding decompensation episodes in her step three discussion. The ALJ first stated that Plaintiff "has experienced one to two episodes of decompensation, each of extended duration," followed immediately by the statement that she found "no evidence revealing that [Plaintiff] has had any episodes of significant decompensation." [*Doc. 15-4* at 10]. Shortly thereafter, the ALJ stated that Plaintiff did not "meet the C criteria [for Listing 12.04] because she has not had any episodes of decompensation of extended duration." *Id*. The paragraph C criteria for Listing 12.04 require a 2-year documented

history of a chronic affective disorder, plus one of three other factors, including, "[r]epeated episodes of decompensation, each of extended duration."[9]   In addition to the patent inconsistency of the ALJ's listing findings, there is no requirement that decompensation episodes be "significant," but only that they be "repeated."   However decompensation is, by definition, an "exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)"[10] and, therefore, a significant event.   Plaintiff's hospitalization at Peak was certainly an episode of decompensation of extended duration within the definition in paragraph C of Listing 12.04.   Considering the ALJ's confusing decompensation findings, such an event may well have tipped the balance and resulted in a determination that Plaintiff's mental impairments, in fact, do satisfy Listing 12.04.

Additionally, the ALJ was dismissive of Plaintiff's statements regarding her symptoms, finding them to be "less than credible."   [*Doc. 15-4* at 12].   Thus, although Plaintiff repeatedly reported feeling anxious to various providers during the period prior to the ALJ's decision (*see, e.g., Docs. 15-17* at 16; *15-22* at 16; *15-23* at 22, 24, 27; *15-24* at 3; *15-29* at 4, 10; *15-30* at 15, 21), the ALJ did not even discuss anxiety at step two.   Moreover, during Plaintiff's hospitalization

---

[9]POMS DI 34132.013(I)12.04, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0434132013 (site last visited April 25, 2017).

[10] POMS DI 34132.013(C)(4) available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0434132013 (site last visited April 25, 2017).   "Repeated episodes" is defined as "three episodes within 1 year, or an average of once every 4 months," and "extended duration" is defined as "lasting for at least 2 weeks."   *Id*.   Moreover, "more frequent episodes of shorter duration or less frequent episodes of longer duration" may be determined to be "of equal severity" and, therefore, equivalent.   *Id*.

at Peak, she was repeatedly described by her treating physician as "anxious." *See* [*Doc. 15-3 at 13, 21, 25*]. Thus, the Peak records are supportive of Plaintiff's claims of anxiety, which the ALJ deemed not significant enough to even discuss. At the very least, the Peak records are evidence that Plaintiff's mental impairments were more serious than they seemed when the ALJ's decision was issued. Although other conclusions are also possible, new evidence is deemed "material" if it is reasonably possible that it might lead to a different result. *Threet*, 353 F.3d at 1191. The Court finds that the Peak records support a reasonable possibility of a different result, not just with respect to the existence of Plaintiff's mental impairments, but also with respect to Plaintiff's credibility in reporting her symptoms.

### 3. Temporal Relevance

The stated reason for the Appeals Council's rejection of the Peak Records was that the evidence was "about a later time" (*Doc. 13-3* at 3) or, in other words, it wasn't temporally relevant. This is also the sole basis relied upon by Defendant in arguing that rejection of the records was not error. However, the Court disagrees. New evidence is not required to be created prior to the ALJ's decision; only that it "relate to" that period. *See* 20 C.F.R. § 404.970(b). Thus, in *Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013) (unpublished), the Tenth Circuit reversed an Appeals Council decision that rejected [11] additional evidence, including a psychological evaluation that "took place after the ALJ's final decision," on the basis that the "new information is

---

[11] In *Padilla,* 525 F. App'x at 712, the court determined that the Appeals Council's statement that additional evidence was chronologically irrelevant and did not affect its decision indicated that it "could not have considered" the evidence and, therefore, had "rejected it."

about a later time."  Noting that "temporal relevance" was "one of the predicate requirements" of

§ 404.970(b), the *Padilla* court considered, *de novo*, whether the new information was about a later

time and, ultimately, determined that the new psychological report was temporally relevant

because it corroborated other experts' opinions that took place during the time in question.  *Id.*

Likewise, the Administration's own handbook provides that evidence "relates to the period on or

before the date of the ALJ decision" if it is "(1) dated before or on the date of the ALJ decision, *or*

(2) *post-dates the ALJ decision* but is reasonably related to the time period adjudicated by the ALJ"

(emphasis added).[12]

The Peak records relate to a mental condition that was considered and deemed to be

"severe" by the ALJ.  Specifically, Plaintiff's admitting diagnosis was "[m]ajor depression, with

psychotic features" (*Doc. 15-3* at 16), and Dr. Gazarov listed her diagnosis as an "exacerbation"[13]

---

[12] Hearings, Appeals, and Litigation Law Manual ("Hallex") I-3-3-6(B), available at https://www.ssa.gov/O P_Home/hallex/I-03/I-3-3-6.html (site last visited April 25, 2017).  Note 1 to that provision further provides that "[t]he [Appeals Council] does not apply a strict deadline when determining if post-dated evidence relates to the period at issue.  There are circumstances when evidence dated after the ALJ decision relates to the period at issue.  For example, a statement may relate to the period at issue when it postdates the decision but makes a direct reference to the time period adjudicated by the ALJ.  This may be especially important in a claim involving a date last insured (DLI) where a statement from a treating source dated after an ALJ decision specifically addresses the time period before the DLI."  *Id.*  While this statement implies a greater reluctance to accept post-dated evidence where the claimant's date last insured has passed, that concern is not present in this case, since Plaintiff's DIB eligibility does not expire until the end of 2017.  *See* [*Doc. 15-4* at 7].

[13] Although an exacerbation, or worsening, of a mental condition could mean that the condition did not become disabling until the exacerbation occurred, the listings clearly recognize that mental disorders may involve periodic exacerbations and remissions, during which, a claimant may be unable to work for periods of time and also be able to work for periods of time.  *See* Listing 12.00(F)(4)(b) in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1.  Also, if Plaintiff were to be found disabled as of the date of her hospitalization, the ALJ would still be expected to establish a "date of onset" of that disability.  See, e.g., Soc. Sec. Rep. 83-20 (Titles II and XVI: Onset of Disability).

of "[s]chizoaffective disorder, bipolar type" (*id.* at 14). The Peak records additionally corroborate at least some of Plaintiff's complaints during the period prior to the ALJ's decision, such as anxiety and anger, which the ALJ apparently discounted based on a determination that Plaintiff was not credible. Therefore, the Court concludes that the Peak records "reasonably relate" to the time period that was considered by the ALJ.

The Court finds that the Peak records satisfied all three criteria for consideration of additional evidence by the Appeals Council because that evidence was "new, material, and chronologically pertinent." *Threet*, 353 F.3d at 1191. If additional evidence meets the new, material, and temporally relevant standards, and "the Appeals Council did not consider it, the case should be remanded for further proceedings." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004). *See also*, *Threet*, 353 F.3d at 1192 (rejection of such evidence "means that the Appeals Council did not evaluate the entire record including the new evidence, [and] that failure constitutes substantial legal error necessitating a remand for further proceedings"). Based on the Appeals Council's failure to consider new, material, and chronologically pertinent information, this matter will be remanded for additional proceedings.

### B. Plaintiff's Additional Arguments

Because this Court has determined that Plaintiff's case must be remanded for further consideration of the Peak records, it is unnecessary to resolve Plaintiff's additional issues at this time, since those issues may be affected by the proceedings on remand. *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) (declining to reach the plaintiff's step five claims because they may be affected by resolution of the case on remand); *Lopez v. Astrue*, 371 F.App'x. 887, 889 and 892 n.6 (10th Cir. March 29, 2010) (unpublished) (court need not reach

claims regarding ALJ's reliance on VE testimony, since such issues may be affected by treatment of the case on remand for further consideration) (citing *Robinson*, 366 F.3d at 1085). Accordingly, the Court will not attempt to fully discuss or resolve those issues at this time. However, the Court will provide limited guidance on some of the issues raised by Plaintiff in this appeal in an effort to avoid another appeal on the same or similar grounds.

### 1. Plaintiff's Drug Usage

First, Plaintiff contends that the ALJ improperly relied on her "overuse of opioid medication . . . to find her not credible." [*Doc. 20* at 19]. The Court agrees that the ALJ's decision does repeatedly refer to Plaintiff's use of narcotic pain killers, including the following statements: William Chestnut, M.D. noted Plaintiff "requires five Vicodin[14] to get through her [12-hour] shift . . . [and] he was eager to get her off the Vicodin" (*Doc. 15-4* at 12) (citing *Doc. 15*-17 at 5); Myrna Gallegos, CNP "has documented that [Plaintiff] has been on narcotic pain medications for several years due to right knee pain [and] [s]he was requesting pain medication, but Ms. Gallegos noted this is prescribed by her orthopedist; therefore, she must obtain from that provider" (*id*. at 13); in July 2013, Plaintiff "was requesting refills of her pain medications, but could not tell the provider what she was taking [and] [s]he was very upset that the provider denied her request" (*id*) (citing *Doc. 15-20* at 26-26); Robert Schenck, M.D. "advised [Plaintiff] that only one provider should be managing her pain medications" (*id*. at 13-14) (citing *Doc. 15-21* at 6-9);

---

[14] Vicodin is combination of acetaminophen (brand name Tylenol) and hydrocodone, an opioid (narcotic) pain medication. https://www.drugs.com/search.php?searchterm=Vicodin&a=1 (site last visited April 25, 2017).

Plaintiff "advised [Mario Cruz, M.D.] of her long-standing opiate use and said she began to have depression and anxiety because of this" (*id*. at 14); Plaintiff "admitted to abuse of prescriptions [sic] opiate medications, particularly hydrocodone," to Dr. Cruz, saying "she has tried to detox herself with the help of her mother and now is taking 5 milligrams per day [and] [s]he has had serious withdrawal symptoms from opiates, but denied symptoms of alcohol withdrawal" (*id*.); Dr. Cruz "felt the cause [of Plaintiff's depression symptoms] could not be determined given she was a bad historian . . . had chronic pain syndrome[] and she overused opiate pain medication, so he could not rule out substance intoxication" (*id*); Dr. Cruz further noted that Plaintiff "appeared delirious" and that "he felt her presentation was likely related to use or misuse of her pain medications, noting she still takes multiple opiate medications and possibly uses with alcohol," and he "felt she would benefit from outpatient substance abuse treatment (*id*.) (citing *Doc. 15-22* at 21-22); and Chris Cunningham, LMSW recommended that Plaintiff "get medication management to ensure she is taking the proper medications as prescribed" (*id*.). The ALJ summarized this evidence, stating:

> There is evidence that [Plaintiff] has overused her pain medications along with alcohol [citing *Doc. 15-21* at 13-16]. She testified that this was not true and does not know why her medical records have been written with this information, but said she believes it began with a visit to a clinic at University of New Mexico Medical Center, and carried on to her medical records at Family Choice. She said she could not understand and thought maybe because it involves insurance through a state program, they focus on substance abuse issues. Regardless, there is evidence from several sources revealing that [Plaintiff] has often gotten angry when a provider has not given her opiate pain medications and she has sought narcotic pain medication prescriptions through different providers, as discussed herein.

*Id*. at 16.

Despite these numerous references to Plaintiff's drug usage, the ALJ did not find that substance abuse was an impairment, either severe or non-severe, in Plaintiff's case. *Id*. at 8.

However, repeated references to drugs at least arguably suggest that the ALJ considered substance use to have had at least some impact on Plaintiff's psychological symptoms. Moreover, if the ALJ suspected substance abuse, that suspicion also may have negatively impacted her credibility assessment of Plaintiff, as Plaintiff suggests. While that may or may not have been this ALJ's view, it is worth noting that there is a standard protocol for considering drug usage in disability cases, which was not followed in this case. *See* Soc. Sec. Rep. 13-2p ("Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism"). The protocol applies where there is evidence that drug addiction or alcoholism (hereinafter "DAA") is a medically determinable impairment (hereinafter "MDI"). *Id*. at *10. In such cases, the protocol first requires the ALJ to apply the five-step SEP to determine whether "the claimant is disabled considering *all* MDIs, *including DAA*." *Id*. at *6 (emphasis added). "It is beyond dispute that an ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less." *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). If the claimant is determined to be disabled after the first SEP, a second SEP is required, in order to determine whether she would still be disabled in the absence of DAA. SSR 13-2p at *6. If the claimant would not be disabled absent the DAA, the DAA is said to be "material" to the disability finding and benefits are denied. *Id*. at *5. However, *two* SEPs are required, even "[w]hen the claimant's other impairment(s) is not disabling by itself." *Id*. at 6. In this case, it appears that Plaintiff's DAA was considered to be an MDI, but no such finding was made, nor was the two-stage protocol implemented. This appears to have been error. Therefore, on remand, a finding should be made at step two of the SEP regarding whether or not Plaintiff's narcotics usage constitutes a MDI and, if so, the SSR 13-2p protocol should be followed.

## 2. Reliability of the Vocational Evidence

Second, the Plaintiff argues on appeal that the VE's testimony regarding the number of document preparer jobs is "unreliable" because it is "vastly different from" job numbers provided by other VEs in other cases. [*Doc. 20* at 22]. Plaintiff also contends that neither of the representative jobs is likely to exist "in this technological age," and that those jobs' very existence depends on outdated information. *Id*. at 21-22. However, these objections to the VE's testimony were not made by Plaintiff's former counsel at the ALJ hearing. Therefore, on remand, Plaintiff's counsel should raise this issue in such a way that it can be fully addressed by the Commissioner and/or the ALJ, or accept the risk that failure to do so may be deemed a waiver of the issue. *See, e.g., Maes v. Astrue*, 522 F.3d 1093, 1097(10th Cir. 2008) (claimant's counsel cannot allow evidence to stand and then argue that the ALJ failed to develop the record); *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) ("ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored").

_____

## VI.   Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded for proper consideration of the additional evidence (*Doc. 15-3* at 9-26) submitted by Plaintiff to the Appeals Council.

**IT IS THEREFORE ORDERED** that Plaintiff's *Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing, with Supporting Memorandum* (*Doc. 20*) is **GRANTED**, and the Commissioner's decision in this case is **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order.   A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_Lourdes A. Martínez_

**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**